**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE RODGERS GROUP, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MADELINE LEWIS, *et al.*, <br><br> Defendants. | Civil Action No. 22-482 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon The Rodgers Group, LLC ("Rodgers Group") and Lexipol, LLC's ("Lexipol") (collectively, "Counterclaim Defendants") Motion to Dismiss (ECF No. 79) the Second Amended Counterclaims of Madeline Lewis ("Lewis"), John String ("String"), and Aspirant Consulting Group LLC ("Aspirant") (collectively, "Counterclaim Plaintiffs") (ECF No. 78). Counterclaim Plaintiffs opposed (ECF No. 80), and Counterclaim Defendants replied (ECF No. 81). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons outlined below, Counterclaim Defendants' Motion to Dismiss is denied.

**I.   BACKGROUND**[1]

The Court has thoroughly described the facts underlying this dispute on multiple occasions, most recently in its August 13, 2024 Opinion ("August 2024 Opinion"), and thus will only summarize them here. (*See* Aug. Op. 1-6, ECF No. 71.) Lewis and String left Rodgers Group to

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations underlying the Counterclaims as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

start Aspirant—a competing consulting business premised on the same business model as Rodgers Group. (*Id.* at 2.) Rodgers Group filed suit against Lewis and String, alleging that they stole confidential information from Rodgers Group and used the confidential information to poach its clients. (*Id.* at 3) This Court issued a Stipulated Consent Order for a preliminary injunction requiring Lewis and String, in part, to refrain from accessing data acquired from Rodgers Group and to restore Rodgers Group's access to certain software accounts. (*Id.* at 3.)

Counterclaim Plaintiffs originally filed two Amended Counterclaims: (1) tortious interference with contractual and prospective contractual relationships; and (2) commercial disparagement.[2] (*Id.* at 3-4.) Counterclaim Defendants moved to dismiss the two Amended Counterclaims for failure to state a claim. (ECF No. 64.) The Court granted Counterclaim Defendants' motion to dismiss as it pertained to Counterclaim Plaintiffs' commercial disparagement claim and denied it as it pertained to their tortious interference claim. (Aug. Op. 10-11.) Shortly after, Counterclaim Plaintiffs filed their Second Amended Counterclaims. (Second Am. Countercls., ECF No. 78.) The Court now considers Counterclaim Plaintiffs' Second Amended Counterclaims.

Counterclaim Plaintiffs' Second Amended Counterclaims, again, allege the following claims: (1) tortious interference with contractual and prospective contractual relationships; and (2) commercial disparagement. (*See id.*) In this Memorandum Opinion today, the Court focuses only on the additional allegations brought in the Second Amended Counterclaims and whether such additions render Counterclaim Plaintiffs' Second Amended Counterclaims capable of surviving Counterclaim Defendants' Motion to Dismiss. That said, Counterclaim

---

[2] When answering the Counterclaim Defendants' Amended Complaint, Counterclaim Plaintiffs filed two Amended Counterclaims. (ECF No. 62.)

Plaintiffs' allegations underpinning their tortious interference with contractual and prospective contractual relationships claim remain unchanged.[3]

The Court cannot say the same for the allegations underpinning Counterclaim Plaintiffs' commercial disparagement claim. Counterclaim Plaintiffs allege that after leaving Rodgers Group, eight police departments engaged them to provide services. (*Id.* ¶ 2.) An employee of Counterclaim Defendants, however, allegedly terminated Counterclaim Plaintiffs' access to certain client software sites without client permission. (*Id.* ¶ 3.) The General Counsel of Lexipol ("General Counsel"), which acquired Rodgers Group and was joined in this litigation, also allegedly sent the Stipulated Consent Order to other police departments. (*Id.* ¶ 4.) General Counsel then told those police departments that Counterclaim Plaintiffs admitted to committing unlawful conduct and that the police departments would be subject to litigation if they did business with Counterclaim Plaintiffs. (*Id.*) Counterclaim Plaintiffs further allege that Lexipol's co-founder, Gordon Graham, "preached" to members of the Pennsylvania Law Enforcement Accreditation Commission (the "PLEAC") that having commission members working as paid consultants (some of whom are employed by Counterclaim Plaintiffs) will ultimately harm the integrity of the PLEAC, which was purportedly a negative reference to Counterclaim Plaintiffs' business and services. (*Id.* ¶ 24.) Ultimately, because of Counterclaim Defendants' alleged actions, at least one police department ("Police Department 9") decided not to finalize a contract with Counterclaim Plaintiffs worth at least $72,000. (*Id.* ¶¶ 9-11.)

---

[3] In its August 2024 Opinion, the Court found that the allegations were sufficient to state a claim. (Aug. Op. 7-10.)

## II.  **LEGAL STANDARD**

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *See, e.g.*, *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure[4] 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

III. **DISCUSSION**[5]

The Court considers Counterclaim Plaintiffs' two claims in turn.

A. **Tortious Interference with Contractual and Prospective Contractual Relationship**

Because Counterclaim Plaintiffs' allegations in the Second Amended Counterclaims underlying their tortious interference claim remain the same as in their Amended Counterclaims (*see* Redlined Changes to Second Am. Countercls., ECF No. 78-1), the Court finds no reason to deviate from its finding in its August 2024 Opinion "that Counterclaim Plaintiffs adequately state a claim for tortious interference with respect to Police Department 9" (Aug. Op. 10).

B. **Commercial Disparagement**

To state a claim for commercial disparagement, Counterclaim Plaintiffs must plead four elements: "(1) [a] publication[;] (2) with malice[;] (3) of false allegations concerning plaintiff's property or product[;] (4) causing special damages, i.e., pecuniary harm." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016) (citing *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977)).

In its August 2024 Opinion, the Court dismissed Counterclaim Plaintiffs' commercial disparagement claim because their pleading alleged that the misrepresentations "were about Counterclaim Plaintiffs themselves, not Counterclaim Plaintiffs' products, services, or goods." (Aug. Op. 10-11.) That was fatal to their claim because, in New Jersey, "no action for commercial disparagement will lie [where] the statements are directed at the vendor, not his goods [or services]." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 927 (3d Cir. 1990).

---

[5] The Court incorporates its discussion from the August 2024 Opinion here by reference. (Aug. Op. 7-11.)

Here, the Court finds that Counterclaim Plaintiffs' allegations in the Second Amended Counterclaim underlying their disparagement claim cure the deficiencies identified in the Court's August 2024 Opinion. That is, Counterclaim Plaintiffs' Second Amended Counterclaims now contain allegations that Counterclaim Defendants made false statements about Counterclaim Plaintiffs' services. (Second Am. Countercls. ¶¶ 15-25.) More specifically, Counterclaim Plaintiffs allege that Counterclaim Defendants told prospective clients that Counterclaim Plaintiffs were "severely restricted in their ability to provide the services they claim to offer" and that Counterclaim Plaintiffs would be unable to provide the services they claim to offer. (*Id.* ¶ 16.) Because the Court found that Counterclaim Plaintiffs failed to allege that the purported statements were about Counterclaim Plaintiffs' services, the Court did not reach the remaining elements of a disparagement claim in its August 2024 Opinion.

In moving to dismiss the Second Amended Counterclaims, Counterclaim Defendants now make three arguments, which, according to them, require Counterclaim Plaintiffs' commercial disparagement claim to be dismissed for failure to state a claim. (*See generally* Countercl. Defs.' Mot. Dismiss Second Am. Countercls., ECF No. 79.) First, Counterclaim Defendants argue that Counterclaim Plaintiffs have not adequately alleged malice. (*Id.* at 3.) Second, Counterclaim Defendants argue that Counterclaim Plaintiffs have not adequately alleged special damages. (*Id.*) Lastly, Counterclaim Defendants argue that New Jersey's anti-SLAPP statute, the Uniform Public Expression Protection Act, protects all of Counterclaim Defendants' alleged statements. (*Id.*) The Court will consider each of these arguments in turn.

*1.    Malice*

First up is Counterclaim Defendants' argument that Counterclaim Plaintiffs have not adequately alleged malice—an element of a commercial disparagement claim under New Jersey law. (*Id.* at 5.)

"To allege malice in a trade libel or commercial disparagement claim, [Counterclaim Plaintiffs] must allege facts to suggest that the accused knew the statements were false or that they were 'published with reckless disregard for their falsity.'" *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-5072, 2009 WL 2568105, at *10 (D.N.J. Aug. 18, 2009) (quoting *Floorgraphics, Inc. v. New Am. Mktg. In-Store Serv., Inc.*, No. 04-3500, 2006 WL 2846268, at *6 (D.N.J. Sept. 29, 2006)).

In its August 2024 Opinion, the Court found that Counterclaim Plaintiffs adequately alleged malice as to their tortious interference claim, based on the same underlying facts, because Counterclaim Plaintiffs alleged Counterclaim Defendants made false statements about a competitor to their prospective customers. (Aug. Op. 9.) Here, the same logic applies. Counterclaim Plaintiffs directly allege that "[Counterclaim Defendants] knowingly and recklessly disseminated . . . false and disparaging statements . . . about [Counterclaim Plaintiffs] and their services to [Counterclaim Plaintiffs'] customers[.]" (Second Am. Countercls. ¶ 15.) Specifically, Counterclaim Plaintiffs allege that Counterclaim Defendants told Counterclaim Plaintiffs' potential clients that they were "'severely restricted' in their ability to provide the services they claim to offer," (Second Am. Countercls. ¶ 16), which, according to Counterclaim Plaintiffs, was known to be false by Counterclaim Defendants (*id.* ¶ 15). At the pleading stage, these allegations are sufficient to "suggest that the accused knew the statements were false or that they were 'published with reckless disregard for their falsity.'" *Pactiv Corp.*, 2009 WL 2568105, at *10

7

(quoting *Floorgraphics, Inc.*, 2006 WL 2846268, at *6). The Court, therefore, is satisfied that Counterclaim Plaintiffs have adequately alleged malice.

### 2. *Special Damages*

Next up is Counterclaim Defendants' argument that Counterclaim Plaintiffs fail to adequately allege special damages.

To adequately plead special damages, Counterclaim Plaintiffs must "allege either the loss of particular customers by name, or a general diminution in [their] business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (quoting *Juliano v. ITT Corp.*, No. 90-1575, 1991 WL 10023, at *6 (D.N.J. Jan. 22, 1991)).

Counterclaim Defendants concede that Counterclaim Plaintiffs have alleged specific loss of particular customers but contend that they fail to allege any facts suggesting that the lost business was the result of Counterclaim Defendants' statements. (Countercl. Defs.' Mot. Dismiss Second Am. Countercls. 4-5.) Counterclaim Plaintiffs, however, allege that Police Department 9, which decided not to finalize a $72,000 contract, sought legal advice about the risk of litigation based on Counterclaim Defendants' statements. (Second Am. Countercls. ¶¶ 9-11.) Because Police Department 9 sought legal advice based on those statements, it is plausible that the lost business was "the natural and direct result of the false publication." *Mayflower Transit*, 314 F. Supp. 2d at 378 (citation and quotation marks omitted). The Court, therefore, finds that Counterclaim Plaintiffs have adequately alleged special damages.

### 3. *New Jersey's Anti-SLAPP Statute*

Last up is Counterclaim Defendants' argument that New Jersey's anti-SLAPP statute precludes Counterclaim Plaintiffs' commercial disparagement claim.

Here, the Court finds that New Jersey's anti-SLAPP statute does not apply to this case. *See* N.J. Stat. Ann. § 2A:53A-50(c). Subsection (c) of New Jersey's anti-SLAPP statute provides that the statute "does not apply to a cause of action asserted . . . against a person primarily engaged in the business of selling or leasing goods or services if the cause of action arises out of a communication related to the person's sale or lease of the goods or services" *Id.* For purposes of the statute, the definition of "person" includes businesses. N.J. Stat. Ann. § 2A:53A-50(a)(3). Because this cause of action "arises out of a communication related to [Counterclaim Defendants'] sale . . . of . . . services[,]" specifically communications between Counterclaim Defendants and potential clients, New Jersey's anti-SLAPP statute does not apply. *See* N.J. Stat. Ann. § 2A:53A-50(c).

Having found that Counterclaim Plaintiffs have sufficiently alleged malice, special damages, and a false statement about Counterclaim Plaintiffs' services, the Court finds that they have adequately pled a commercial disparagement claim.[6] *See Intervet, Inc.*, 2016 WL 740267, at *6 (citation omitted).

---

[6] Counterclaim Defendants do not dispute that Counterclaim Plaintiffs have sufficiently pled the first element of commercial disparagement, publication. (*See generally* Countercl. Defs.' Mot. Dismiss Second Am. Countercls.)

## IV. **CONCLUSION**

For the reasons set forth above, Counterclaim Defendants' Motion to Dismiss is denied.

The Court will issue an Order consistent with this Memorandum Opinion.

                                                  /s/ Michael A. Shipp
                                           MICHAEL A. SHIPP
                                           UNITED STATES DISTRICT JUDGE